IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KENNETH D. LEWIS,
    Plaintiff,

vs.                                            Case No.: 3:16cv63/RV/EMT

R.M. TAYLOR, et al.,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Kenneth D. Lewis ("Lewis"), proceeding pro se and in forma pauperis, commenced this action by filing a civil rights complaint, pursuant to 42 U.S.C. § 1983 (ECF No. 1). The matter is now before the court on Lewis' First Amended Complaint (ECF No. 10).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). After careful consideration of all issues raised by Lewis, it is the opinion of the undersigned that this case should be dismissed because Lewis has not stated, and cannot state, a plausible federal claim against any Defendant.

I.      BACKGROUND

Lewis is an inmate of the Florida Department of Corrections ("FDOC"), housed at Walton Correctional Institution. He names the following five Defendants: (1) R.M. Taylor, a sergeant at Walton C.I.; (2) Julie Jones, Secretary of the FDOC; (3) John Whitehurst, Warden of Walton C.I.; (4) W.M. Kelly, a prison official at Walton C.I.; and (5) J.W. Carroll, a prison official at Walton C.I. (ECF No. 10 at 1–2, 5, 7).

Lewis alleges that on December 16, 2015, Defendant Taylor wrote a disciplinary report ("DR") charging him with committing an obscene or profane act (ECF No. 10 at 5). Lewis attached a copy of the DR to his original complaint (ECF No. 1-1 at 6). Lewis alleges Defendant Taylor's allegations were false (*id.* at 7). He alleges the disciplinary hearing team, consisting of Defendants Kelly and Carroll, held a hearing on December 22, 2015 (*id.* at 5, 7). Lewis alleges the disciplinary team found him guilty of the infraction based upon Defendant Taylor's allegations (*id.*). Lewis alleges that he was sentenced to twenty (20) days in disciplinary confinement (*id.*). He attached a copy of the disciplinary team's decision to his original complaint (ECF No. 1-1 at 19).

Lewis describes the conditions of disciplinary confinement as the following (ECF No. 10 at 5–6). He was in a cell by himself. He was deprived of telephone and visiting privileges. He was escorted to and from his confinement cell in handcuffs and

shackles. The cell had a toilet and slot in the door large enough for officers to provide a food tray, but no window. He was in the cell for 22–24 hours each day. He was permitted to purchase only five (5) items from the canteen. He was permitted to shower at the discretion of the officer on duty. He was served substandard and sometimes spoiled food. He constantly heard cries of other inmates.

Lewis claims that Defendant Taylor's fabricating the DR subjected him to cruel and unusual punishment, in violation of the Fourth, Eighth, and Fourteenth Amendments (ECF No. 10 at 5, 7). He claims that Taylor's allegedly false, libelous, and defamatory statements caused him to suffer "emotional flatness," depression, social withdrawal, "confused thought process," hypertension, "feelings of overall deterioration," and suicidal ideation (*id.* at 5–6). He also claims that the DR caused him to lose a "good adjustment" transfer (*see* ECF No. 10 at 7; *see also* ECF No. 1-1 at 17, Inmate Transfer Notification). As relief, Lewis seeks a declaratory judgment, expungement of the DR, a written apology from Defendant Taylor, a "good adjustment transfer," and monetary damages (ECF No. 10 at 7).

II.  DISCUSSION

   A.   <u>Federal Claims</u>

To survive dismissal at the screening phase, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotation marks and citation omitted). The plausibility standard is met only where the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint's allegations must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Mere "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do," and a plaintiff cannot rely on "naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks and alteration omitted); *see also* Franklin v. Curry, 738 F.3d 1246, 1251 (11th Cir. 2013). Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 556 U.S. at 679. Finally, in civil rights cases, "[m]ore than mere conclusory notice pleading is required . . . . A complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003) (quotation marks and alteration omitted).

Case No: 3:16cv63/RV/EMT

The Eighth Amendment prohibits infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The Supreme Court has developed a two-part analysis governing Eighth Amendment challenges to prison conditions. *See* Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004).

> First, under the "objective component," a prisoner must prove that the condition he complains of is sufficiently serious to violate the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 8, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992). The challenged condition must be "extreme." *Id.* at 9, 112 S. Ct. at 1000. While an inmate "need not await a tragic event" before seeking relief, Helling v. McKinney, 509 U.S. 25, 33, 113 S. Ct. 2475, 2481, 125 L. Ed. 2d 22 (1993), he must at the very least show that a condition of his confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety, *id.* at 35, 113 S. Ct. at 2481. Moreover, the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [the challenged condition of confinement]. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. *Id.* at 36, 113 S. Ct. at 2482. The Eighth Amendment thus guarantees that prisoners will not be "deprive[d] . . . of the minimal civilized measure of life's necessities." Rhodes [v. Chapman], 452 U.S. [337,] 347, 101 S. Ct. [2392,] 2399[, 69 L. Ed. 2d 59 (1981)].

Chandler, 379 F.3d at 1289–90.

The second part of the two-part analysis is the "subjective component":

> [T]he prisoner must show that the defendant prison officials "acted with a sufficiently culpable state of mind" with regard to the condition at issue. Hudson, 503 U.S. at 8, 112 S. Ct. at 999 (marks and citation omitted). The proper standard is that of deliberate indifference. Wilson v. Seiter, 501 U.S. 294, 303, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991). Negligence does not suffice to satisfy this standard, *id.* at 305, 111 S. Ct. at 2328, but a prisoner need not show that the prison official acted with "the very purpose of causing harm or with knowledge that harm [would] result," Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978, 128 L. Ed. 2d 811 (1994). In defining the deliberate indifference standard, the Farmer Court stated: [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.* at 837, 114 S. Ct. at 1979. Furthermore, the official may escape liability for known risks "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844, 114 S. Ct. at 1982–83.

Chandler, 379 F.3d at 1289–90.

Here, Lewis' allegations fail to state a plausible Eighth Amendment claim against any Defendant. Considering the conditions to which Lewis was exposed and the duration of his exposure, the facts do not plausibly suggest that his 23-day stint in confinement and loss of a "good adjustment transfer" posed an unreasonable risk of serious damage to his future health or safety.[1,2] Accepting Lewis' factual allegations

---

[1] Lewis' description of the conditions of his disciplinary confinement are consistent with the description of disciplinary confinement in the FDOC's administrative rules. The rules define disciplinary confinement as "a form of punishment in which inmates found guilty of committing

as true, they simply do not satisfy the objective component of the Eighth Amendment standard. Therefore, his Eighth Amendment claims against all Defendants should be dismissed.

---

violations of the department rules are confined for specified periods of time to individual cells based upon authorized penalties for prohibited conduct." Fla. Admin. Code r. 33-602.222(1)(f). All cells in disciplinary confinement are equipped with toilet facilities and running water for drinking and other sanitary purposes. *See id.* r. 33-602.222(3)(b). Inmates are provided the same clothing, bedding, and linen as the general inmate population. *See id.* r. 33-602.222(4)(a)–(b). Inmates are allowed to retain stamps, eyeglasses, hearing aids, personal watches, rings, and religious items and reading material. *See id.* r. 33-602.222(3)(c), (o). Inmates are afforded, at a minimum, the following comfort items: toothbrush, toothpaste, bar of soap, towel, and toilet tissue. *See id.* r. 33-602.222(3)(d). Each inmate receives at least three showers and shaves per week. *See id.* r. 33-602.222(3)(e). Inmates receive meals representative of the food served to the general population, but not necessarily a choice of every item. *See id.* r. 33-602.222(3)(f). Inmates are allowed to make canteen purchases once every other week, but items sold to them are restricted for institutional safety and security. *See id.* r. 33-602.222(3)(g). Non-indigent inmates are allowed to purchase deodorant, shower shoes, stamps, envelopes, security pens, and paper. *See id.* Inmates are allowed visits only when specifically authorized by the warden. *See id.* r. 33-602.222(3)(i). When an inmate is denied visiting privileges, the warden must ensure that inmates are provided the opportunity, at the inmate's expense, to notify at least three approved visitors of the prohibitions or restrictions before the next scheduling visiting day, or prison staff shall make the notifications by phone if the inmate is unable to make them. *See id.* Telephone privileges are allowed for emergency situations, or in any other circumstances when a call is authorized by the warden. *See id.* r. 33-602.222(3)(l). Inmates are allowed routine correspondence privileges. *See id.* r. 33-602.222(3)(m). Inmates are permitted to have access to legal materials and supplies. *See id.* r. 33-602.222(3)(k). For inmates housed in disciplinary confinement for less than thirty days, they may exercise in their cells. *See id.* r. 33-602.222(3)(p). With regard to physical restraints, inmates are handcuffed behind their backs prior to opening the cell door, and leg irons are applied if the inmate is being taken outside the immediate housing unit. *See id.* r. 33-602.222(6).

[2] According to the attachments to Lewis' original complaint, he was placed in administrative confinement from December 16 to December 22 (the date of the disciplinary hearing). Upon his being found guilty of the disciplinary infraction, he was placed in disciplinary confinement until January 8, 2016 (*see* ECF No. 1-1 at 3, 6, 19).

Lewis' complaint also fails to state a plausible claim for relief under the Fourteenth Amendment. In Sandin v. Conner, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995), the Supreme Court recognized that there are two instances in which a prisoner may claim a constitutionally protected liberty interest which implicates constitutional due process concerns: (1) when actions of prison officials have the effect of altering the inmate's term of imprisonment, and (2) where a prison restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484. Because Lewis lost no gain-time, and because 23 days in confinement is not "the type of atypical, significant deprivation in which a State might conceivably create a liberty interest," 515 U.S. at 486, even when coupled with the loss of a "good adjustment transfer," Lewis cannot state a plausible claim that his due process rights were violated in connection with the disciplinary proceeding or placement in confinement. *See* Sandin, 515 U.S. at 486 (holding that prisoner's placement in segregated disciplinary confinement for 30 days was not atypical or significant enough to trigger due process protection); Rogers v. Singletary, 142 F.3d 1252 (11th Cir. 1998) (concluding that inmate's allegation that he was in segregated confinement for 2 months failed to show the deprivation of a protected liberty interest); *see also, e.g.*, Mathews v. Moss, 506 F. App'x 981, 983

(11th Cir. 2013) (concluding that inmate failed to state a plausible due process claim where he was subjected to confinements of 24 and 18 days in administrative confinement)[3]; Smith v. Reg'l Dir. Fla. Dep't of Corr., 368 F. App'x 9, 13 (11th Cir. 2010) (concluding that inmate failed to state a plausible due process claim where he was subjected to confinements of 15 and 30 days in disciplinary confinement); Ferris v. Jones, No. 4:14cv454/RH/GRJ, 2015 WL 4668297, at *6 (N.D. Fla. Aug. 5, 2015) (concluding that inmate's allegation that he was in placed in disciplinary confinement for 54 days failed to show the deprivation of a protected liberty interest); Robinson v. Gielow, No. 3:14cv223/LAC/EMT, 2015 WL 1485020, at *3 (N.D. Fla. Mar. 31, 2015) (concluding that inmate's allegation that he was in placed in disciplinary confinement for 60 days failed to show the deprivation of a protected liberty interest).

Additionally, even if Lewis could show that his 23-day placement in confinement and loss of a "good adjustment transfer" implicated a liberty interest protected by procedural due process, his allegations still fail to state a due process violation. As Lewis was previously advised (*see* ECF No. 8), the filing of false disciplinary charges against an inmate does not alone amount to a constitutional

---

[3] The undersigned cites unpublished Eleventh Circuit opinions only as persuasive authority and recognizes that the opinions are not considered binding precedent. *See* 11th Cir. R. 36-2.

violation.  *See* Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 951–53 (2d Cir. 1986).  This is primarily because the Constitution requires only that a plaintiff be afforded due process at the institutional hearing, which represents his opportunity to expose any such falsities or inaccuracies. Freeman, 808 F.2d at 952; *see also* Wolff v. McDonnell, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974).

In the instant case, Lewis alleges only that the DR was false; however, he does not present any factual allegations suggesting that the prison did not provide him with due process protections prior to finding him guilty and imposing punishment for the disciplinary infraction.  Furthermore, Lewis does not allege non-conclusory facts showing that prison officials relied on information that they knew was false in finding him guilty and upholding the determination of guilt.  *See* Monroe v. Thigpen, 932 F.2d 1437, 1441–42 (11th Cir. 1991).  Therefore, Lewis' allegations fail to state a plausible due process claim.

    B.    State Law Claims

To the extent Lewis brings state law claims of libel and defamation against Defendant Taylor, the court should decline to exercise supplemental jurisdiction over those claims.  It is well established that once a plaintiff's federal claims are dismissed,

there remains no independent federal jurisdiction to support the court's exercise of supplemental jurisdiction over any state claims against a defendant. *See* Baggett v. First Nat'l Bank of Gainesville, 117 F.3d 1342, 1352 (11th Cir. 1997). Title 28 U.S.C. § 1367(c)(3) provides that the district court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction. *See also* United Mine Workers v. Gibbs, 383 U.S. 715, 725–26, 86 S. Ct. 1130, 1138–39, 16 L. Ed. 2d 218 (1966). Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction. Baggett, 117 F.3d at 1353 (citing Palmer v. Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1569 (11th Cir. 1994); Exec. Software N. Am. v. United States Dist. Court, 15 F.3d 1484, 1493 (9th Cir. 1994); New England Co. v. Bank of Gwinnett Cnty., 891 F. Supp. 1569, 1578 (N.D. Ga. 1995); Fallin v. Mindis Metals, Inc., 865 F. Supp. 834, 841 (N.D. Ga. 1994)). The Eleventh Circuit has encouraged district courts to dismiss any remaining state claims when the federal claims have been dismissed prior to trial. *See* Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004).

Taking these factors into account in this case, the court concludes that any state law claim asserted by Lewis should be dismissed to permit him to pursue it in a more

appropriate forum. While it would be convenient for Lewis to continue litigating his case in this court, this court has a substantial number of original jurisdiction cases awaiting review, and neither judicial economy nor fairness to other litigants supports retaining jurisdiction of Lewis' state claims and delaying justice in other cases. Furthermore, the state court is best equipped to research and rule on matters of state law, and comity would suggest that it should be allowed to do so. Moreover, the supplemental jurisdiction statute contains a tolling provision. *See* 28 U.S.C. § 1367(d) (state claims asserted in federal court along with "related" federal claims "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed"); Personalized Media Commc'ns, LLC v. Scientific-Atlantic, Inc., 493 F. App'x 78, 82 n.1 (11th Cir. 2012) ("'Section 1367(d), giving the plaintiff at least 30 days to re-file in state court after a federal court declines to exercise supplemental jurisdiction, removes the principal reason for retaining a case in federal court when the federal claim belatedly disappears.'") (citation omitted). In Krause v. Textron Fin. Corp., 59 So. 3d 1085 (Fla. 2011), the Supreme Court of Florida held that Florida state law claims are tolled while they are pending in federal court, and the plaintiff shall have thirty days after dismissal by the federal court to re-file in state court. *See id.* (citing 28 U.S.C. § 1367). This is specifically "to prevent the limitations period from

Page 13 of 14

expiring" on the Florida state law claim while it is being pursued in federal court in conjunction with the federal claim. *Id.* at 1091. Therefore, Lewis' pursuit of any state law claim in state court would not be prejudiced by this court's declining to exercise supplemental jurisdiction over those claims.

For the aforementioned reasons, it is respectfully **RECOMMENDED**:

1. That Plaintiff Lewis' federal claims be **DISMISSED**, under 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief may be granted.

2. That Plaintiff's state law claims be **DISMISSED without prejudice** to his pursuing them in state court;

3. The clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida, this 9th day of August 2016.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**